IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TERRY A. RAINE, JR.,                :
                                    :
    Plaintiff,                      :
                                    :
vs.                                 :
                                    :    CIVIL ACTION 12-0529-M
CAROLYN W. COLVIN,                  :
Commission of Social Security,[1]   :
                                    :
    Defendant.                      :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 13). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 21). Oral argument was waived in this action (Doc. 20). Upon consideration of the administrative record and the memoranda of

---

[1]Carolyn W. Colvin became the Commissioner of Social Security on February 14, 2013. Pursuant to Fed.R.Civ.P. 25(d), Colvin is substituted for Michael J. Astrue as Defendant in this action. No further action needs to be taken as a result of this substitution. 42 U.S.C. § 405(g).

1

the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was twenty-nine years old, had completed an eleventh-grade education (Doc. 13 Fact Sheet), and had previous work experience as a cook, boat detailer, and warehouse worker (Tr. 51-52). In claiming benefits, Plaintiff alleges disability due to bipolar disorder, narcissistic personality disorder, and status post open reduction internal fixation (ORIF) of the right ankle with broken hardware (Doc. 13 Fact Sheet).

The Plaintiff filed applications for disability benefits and SSI on July 16, 2008 (Tr. 177-83; *see also* Tr. 20). Benefits were denied following a hearing by an Administrative

Law Judge (ALJ) who determined that Raine met the requirements of several of the Listing of Mental Impairments when his substance use disorder was considered, but that he was not disabled when he stopped abusing drugs (Tr. 20-37).  The ALJ went on to find that Raine was not capable of returning to his past relevant work, but that there were specific light work jobs identified which he could perform.  Plaintiff requested review of the hearing decision (Tr. 15) by the Appeals Council, but it was denied (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Raine alleges that:  (1) The ALJ should have ordered a consultative orthopedic examination; and (2) the ALJ posed incomplete hypothetical questions to the vocational expert (hereinafter *VE*) (Doc. 13).  Defendant has responded to—and denies—these claims (Doc. 14).

Plaintiff first claims that the ALJ should have ordered a consultative orthopedic examination of his right ankle (Doc. 13, pp. 3-5).  Noting that there was little medical evidence regarding this impairment, Raine asserts that the ALJ failed to provide a full and fair record by not obtaining this extra medical information.

The Eleventh Circuit Court of Appeals has required that "a full and fair record" be developed by the ALJ even if the claimant is represented by counsel.  *Cowart v. Schweiker*, 662

3

F.2d 731, 735 (11th Cir. 1981).  The Court further notes that the social security regulations have the following to say about obtaining a consultative examination:

> We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim.  Some examples of when we might purchase a consultative examination to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis, include but are not limited to:
> (1) The additional evidence needed is not contained in the records of your medical sources;
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources; or
> (4) There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.

20 C.F.R. § 404.1519a (2012).

The evidence regarding Plaintiff's ankle injury shows that, on April 3-4, 2013, Raine was a patient at the University of South Alabama Medical Center for a right ankle fracture dislocation for which he underwent an ORIF with syndesmotic

4

screw placement (Tr. 256-65).  He was discharged, able to walk with crutches, with good rehabilitation potential and a good prognosis.  He was given a prescription for Lortab[2] and told to keep his right lower extremity elevated for forty-eight hours.

During a physical examination eight years later at Searcy Hospital, Raine's right ankle pain was described as mildly tender (Tr. 308; *see generally* Tr. 301-14).  Plaintiff underwent an orthopedic examination; recommendations were for him to take Ibuprofen on a PRN basis and reduce the walking when it hurt (Tr. 302).  There was some mention of the possible removal of the hardware (Tr. 302).  An x-ray showed the previous right tibia fracture; no acute osteos fractures were identified (Tr. 303).  No physical restrictions or limitations were noted at the time of his discharge (Tr. 301-05).

At the first evidentiary hearing, Raine testified that he had hardware in his right ankle, but that the titanium screws had broken and sometimes he had problems with it (Tr. 75-77).  At the second hearing, Plaintiff stated that his ankle was doing good and that he had not had any problems with it (Tr. 60).

The ALJ discussed this evidence and then noted that Raine had not sought any medical attention for his ankle since the orthopedic examination in 2008 (Tr. 34).  The ALJ went on to

---

[2]**Error! Main Document Only.** *Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain."  *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

find that Plaintiff was "capable of performing light work with occasional climbing of ramps/stairs occasionally but that would not require climbing ropes/ladders/scaffolding" (Tr. 34).

The Court finds that the ALJ was not obligated to order a consultative examination under the language of the regulation. The Court first notes that there was no inconsistency in the evidence; Plaintiff had a fractured ankle that was surgically repaired in 2000. An orthopedic examination in 2008 resulted in no limitations or restrictions being noted or imposed; there was no medication prescribed for pain or discomfort. Raine has sought no treatment since 2008 and last reported that his ankle was doing well. The Court finds no merit in Plaintiff's argument that the ALJ should have ordered a consultative examination.

Raine next claims that the ALJ posed incomplete hypothetical questions to the VE at the evidentiary hearing (Doc. 13, pp. 6-7). More specifically, Plaintiff asserts that the ALJ "erred by failing to be specific regarding [his] ability to walk, sit, stand, use his arms for repetitive movements such as pushing and pulling of arm controls, use his legs for pushing of leg controls, or engage in postural and environmental factors in her questions posed to the vocational expert" (Doc. 13, p. 6). Raine goes on to claim that the ALJ erred in "failing to include questions regarding the Plaintiff's mental residual

6

functional capacity until hypothetical three" (*id.*).  The Eleventh Circuit Court of Appeals has held that an ALJ's failure to include severe impairments suffered by a claimant in a hypothetical question to a vocational expert to be reversible error where the ALJ relied on that expert's testimony in reaching a disability decision.  *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985).

In her decision, the ALJ held that Plaintiff's residual functional capacity was as follows:

> [Raine can] perform less than the full range of light work as defined in 20 C.F.R. 404.1567(b) and 416.957(b), in function by function terms (SSRs 83-10 and 06-8p), with certain non-exertional restrictions associated with that level of exertion.  The claimant's specific physical capabilities during the period of adjudication have been the ability climb [sic] ramps/stairs occasionally and work in a job that would not require climbing ropes/ladders/ scaffolding.  The claimant's specific mental capabilities during the period of adjudication have been the ability to understand, remember and carry short [sic] simple instructions; attend and maintain concentration for 2 hours; have brief superficial contact with the public; work independently but in close proximity with others; and adapt to minimal changes in the work setting.  The claimant could work in a job with supportive nonconfrontational supervision.

(Tr. 29).

At the evidentiary hearing, the ALJ's dialogue with the VE

was as follows:

> Q. Ms. Bethune, I'm going to ask you a hypothetical question, please. If you were to assume an individual that's the same age as Mr. Raine, has the same education, the same work background. This individual would be limited to a full range of medium work. The individual, however, would be precluded from climbing ropes, ladders, or scaffolding. This individual could occasionally climb ramps and stairs.
>
> ***
>
> Q. This individual could understand, remember, and carry out short, simple instructions. This individual could attend and maintain concentration for two hours at a time. This individual could have brief superficial contact with the public. This individual would require supportive non-confrontational supervision. This individual could work in close proximity with coworkers, but would need to work independently. This individual could adapt to minimal changes in the work setting. Based on this hypothetical question, could such an individual perform any of the work that Mr. Raine has previously performed?
>
> A. Should be able to do the detailer work as well as the warehouse work.
>
> Q. I'm going to ask you a second hypothetical, please. This hypothetical, the only change is going to be that the individual would be limited to performing a full range of light work as opposed to medium work. The remainder of the hypothetical would remain the same. Could such an individual perform any of the work that Mr. Raine has previously performed, based on this hypothetical?
>
> A. No, Ma'am.

> Q. Could you identify any occupations in the national economy such an individual could perform?
>
> A. Yes, Ma'am. Could do work such as housekeeper cleaner. That's light and unskilled. And in the national economy there's over one million of those jobs. Could also do production assembler work. That's also light and unskilled. And in the national economy there's approximately 333,000. Could also do garment folder. That's light and unskilled. And in the national economy there's approximately 400,000. Those are examples.
>
> Q. I'm going to ask you a third hypothetical. Ask you to again take hypothetical number two. However, this time the individual would only be able to maintain attention and concentration for up to one hour at a time. Could such an individual perform any of Mr. Raine's past work?
>
> A. No, ma'am.
>
> Q. Could you identify any occupations in the national economy such an individual could perform.
>
> A. No, ma'am.
>
> Q. Is your testimony consistent with the [Dictionary of Occupational Titles]?
>
> A. Yes, ma'am.

(Tr. 62-64).

The Court has reviewed the ALJ's findings and compared them to the questions posed to the VE and finds no inconsistency there. The Court further notes that the ALJ held that Raine

9

could perform light work while going on to explicitly list limitations that reduced his ability to perform the full range of light work; this listing of exclusionary functions implicitly left intact Raine's ability to perform everything not listed at the ability level of someone who could perform light work.  The Court finds no error in the way the ALJ posed questions to the VE.  The Court further finds that it was not necessary for the ALJ to specifically state the amount of time that Plaintiff could sit, stand, walk, etc. in her questions to the VE in this particular circumstance as no limitations in those exertional capacities were demonstrated or found.  Plaintiff's claims otherwise are without merit.

Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 19th day of April, 2013.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE